IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 21, 2001

## STATE OF TENNESSEE v. EVELYN ELISSA DUCKETT

**Direct Appeal from the Circuit Court for Blount County**
**No. C-12171     D. Kelly Thomas, Jr., Judge**

---

**No. E2000-02273-CCA-R3-CD**
**October 9, 2001**

---

The defendant was indicted for robbery and convicted of misdemeanor theft, for which she was sentenced to eleven months and twenty-nine days, and payment of restitution, with the defendant to serve thirty percent of the sentence. She timely appealed, arguing that the entire sentence should have been probated. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Raymond Mack Garner, District Public Defender, and Stacey D. Nordquist, Assistant District Public Defender, for the appellant, Evelyn Duckett.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Michael L. Flynn, District Attorney General; and William R. Reed, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Evelyn Elissa Duckett Melton,[1] was convicted of misdemeanor theft and sentenced to eleven months and twenty-nine days, with thirty percent of this sentence to be served in confinement and the remainder probated. The defendant appealed, raising as the sole issue, whether the entire sentence should have been probated.

The victim, Charles H. Ritchey, who was seventy-five years old at the time of the incident, testified that the defendant came to his house at about 9:15 p.m. on July 15, 1999. He was the owner of a used car lot which was located next to his house. He said that the defendant had come to his car lot to look at cars on three other occasions. He carried a pistol as he went to the door, but put it

---

[1]The defendant married Bobby Melton in December 1999.

down when he recognized the defendant. She asked to use the restroom at his home as well as his telephone. He declined to allow her to come into the house to use his restroom but brought his telephone to the garage; she spoke on it for about three minutes.

The defendant then asked the victim if she could have a soft drink, and he turned to go get one for her. As he was going up the stairs, the defendant hit him in the back and grabbed his right ankle, causing him to fall face-first on the floor. The defendant got on top of him and took his wallet from his back pocket. As she ran to her car and left, the victim telephoned 911 for assistance.

The victim testified that his wallet contained "a twenty dollar bill and two fives and some ones" and four credit cards. Even though he reported the credit cards as stolen, he still received statements for unauthorized charges at Wal-Mart for a television, Sears for a vacuum cleaner and attachments, and Lowe's Hardware for some air tools and attachments.

The defendant testified that she had been to the victim's home on other occasions and that, on one of these visits, he had offered to pay her for sex, and to pay her $50 if she would return for the same purpose. She said that she had returned to collect this money on July 15, 1999, but the victim told her that he did not have it. According to the defendant, the victim fell as he was going up the stairs, and she never touched him. The defendant admitted taking the victim's wallet but denied using any of his credit cards. She said that she took $35 to $40 out of the victim's wallet and then threw the wallet down as she was leaving the victim's driveway.

Officer Doug Moore, of the Blount County Sheriff's Department, testified that he had interviewed the defendant two days after the incident. The videotape of the interview was played for the jury. Although the sound quality was poor, it appeared the defendant gave Officer Moore the same version of events that she testified to at trial.

Following the presentation of this proof, the defendant was convicted of the lesser-included offense of misdemeanor theft and sentenced to eleven months and twenty-nine days, with the defendant to serve thirty percent of the sentence and the remainder on probation. Additionally, the defendant was ordered to pay $330.57 in restitution to the victim and submit to drug and alcohol screens, as ordered by her probation officer.

At the sentencing hearing, the victim reiterated his trial testimony, denying the defendant's claims at trial that he had sought her for sexual favors and that he owed her money for that purpose.

The defendant stated that her testimony at trial had been truthful. She again admitted taking the victim's wallet but denied using his credit cards. She said that she had had an alcohol problem in the past and that she was disabled because she suffered from major depression, osteoarthritis, asthma, and scoliosis.

On November 22, 1999, the defendant had entered pleas of guilty in the Knox County General Sessions Court to several offenses. She pled guilty to having passed worthless checks on

February 8, 1999, for $28.48; February 11, 1999, for $37.62; and February 21, 1999, for $51.74, receiving concurrent sentences in each case of eleven months and twenty-nine days at seventy-five percent, with each sentence suspended, and the defendant ordered to pay restitution. Additionally, she pled guilty the same day to criminal trespass after, according to the affidavit of complaint, propositioning a truck driver for sex, and was sentenced to thirty days, with the sentence probated. This offense occurred approximately two weeks after she had been released on bond following her arrest for the instant offense. Finally, she pled guilty on March 6, 2000, to criminal impersonation, committed on November 28, 1999, and was sentenced to six months confinement, which was suspended.

Additionally, the defendant told the trial court that, as of the date of the sentencing hearing, she had a burglary case pending in Knox County, which was set for trial in February 2001. Also, she admitted to a number of misdemeanor arrests over a period of, at least, several years. However, the record on appeal, which does not contain a presentence report, is insufficient for us to make a precise determination as to her record of convictions.

At the sentencing hearing, the defendant's mother-in-law, Inez Melton, testified that there was "a big difference in [the defendant's] life." She stated that the defendant stayed at home more and was "not out running the road and getting into trouble." She further said that the defendant had never been violent with her or her husband.

At the sentencing hearing, the trial court sentenced the defendant as follows:

> Based upon the verdict of the Jury, it's the judgment of the Court that you are guilty of theft. The sentence imposed is 11 months, 29 days. The place of confinement is the Blount County Jail. Your release eligibility is 30 percent, which means you will serve 30 percent of the sentence and then be released to serve the balance of that sentence on probation.
>
> A condition of your probation will be paying restitution of $330.57 and the court costs.
>
> You can report to serve your jail sentence on Friday. That will give you an opportunity to decide whether you want to appeal the verdict or the sentence or not. And if you wish to appeal, then we can address the question of bond.
>
> In setting the sentence as I did, I considered your very long criminal history. You have very many, many misdemeanor convictions and you have what led to three misdemeanor convictions after committing this offense. I think I'm giving you a lot of credit for what your mother-in-law testified to, by not ordering you to serve

-3-

the whole 11 months and 29 days. I'm giving you the benefit of serving 30 percent of that sentence in jail and the rest of it on probation.

The Jury did not find you guilty of robbery. But the Jury did find you guilty of theft beyond a reasonable doubt. And there's – the circumstances that led to your being there to take the wallet from Mr. Ritchie [sic] were very suspect. And even if you took everything that you say to be true, you still went down there to get money from him. And based on your testimony and about what you say that he said when you went there, he wasn't willing to give you money until you did some more things, even by your story. And you didn't, you just took the money from him. And by Mr. Ritchie's [sic] story, went down there to take his money even though the Jury wasn't convinced that you used violence to do it, you still went down there and took the man's money.

Your chances of rehabilitation, I think appear to be much improved from what it was before. I'm going to require that during the time that you're on probation that you follow the probation officer's instructions about any drug or alcohol treatment that's needed. You are at a point where you can serve the bulk of this sentence on probation and continue to improve your life. But just because you're doing better doesn't mean you don't have to pay up for what you've already done. And that's basically what this is.

## ANALYSIS

### Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

-4-

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

## Probation

The sole issue on appeal is whether the trial court erred in not granting full probation. The defendant contends that her entire sentence should have been probated.

Tennessee Code Annotated Section 40-35-303(a) states that a defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is of eight years or less. Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b). The burden is upon the defendant to show that he is a suitable candidate for probation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). The statutory presumption favoring an alternative sentence is limited to Class C, D, and E felonies. See Tenn. Code. Ann. § 40-35-102(6).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997).

Misdemeanor sentencing guidelines are codified at Tennessee Code Annotated Section 40-35-302(d) which provides, in pertinent part:

> In imposing a misdemeanor sentence, the court shall fix a percentage of the sentence which the defendant shall serve. . . . In determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing, and the enhancement and mitigating factors set forth herein, and shall not impose such percentages arbitrarily.

Trial courts have more flexibility in misdemeanor sentencing than in felony sentencing. State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999), perm. to appeal denied (Tenn. 2000). Further, in sentencing a misdemeanant, the court need not make explicit findings of enhancement and mitigating factors as in a felony case. State v. Russell, 10 S.W.3d 270, 278 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1999).

Our review of misdemeanor sentencing, unlike that for a felony, is to determine whether the trial court considered the purposes of the Criminal Sentencing Reform Act, the sentencing principles, and the enhancement and mitigating factors, and did not impose an arbitrary sentence. Here, the trial judge had the benefit of presiding over the trial and observing the defendant testify at both the trial and the sentencing hearing, as well as hearing from the other witnesses.

Since the record on appeal does not include a presentence report, we cannot determine the number of previous arrests for the defendant, or over what period of time they extended. She was asked if she had been arrested nineteen times in Blount County since 1994, but her answer was unclear, although she did appear to admit to a DUI arrest and others for public intoxication. Apparently, the DUI arrest resulted in her being convicted and placed on probation. Additionally, she had at least five misdemeanor convictions since being released on bond for the instant offense, three of which were committed after the incident which resulted in that charge.

In determining that the defendant should serve thirty percent of her sentence, the trial court observed that the defendant's "chances of rehabilitation . . . appear to be much improved from what it was before." Based upon this statement, and the testimony of Inez Melton, the defendant's mother-in-law, the defendant argues that she "has good potential for rehabilitation." The defendant had a lengthy arrest history, her most recent arrest being on November 28, 1999. We conclude, as did the trial court, that the defendant, not having been arrested during the ten months prior to the sentencing hearing, appeared to have "much improved" rehabilitative chances. However, the trial court's rating of "improved" cannot be equated to "good." Additionally, the lack of arrests for crimes of violence cannot erase the defendant's substantial record over a long period. Considering all of these factors, we cannot conclude that the trial court, after observing the defendant and hearing testimony from all of the witnesses, abused its discretion in concluding that the defendant's rehabilitative prospects would be enhanced by serving thirty percent of her sentence in confinement. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

It is clear from the trial court's comments that consideration was given to the appropriate principles, and that the sentence was not arbitrary. Accordingly, we affirm the judgment of the trial court.


_____
ALAN E. GLENN, JUDGE